**Maureen WARD, Plaintiff,**

v.

**CITY OF BOSTON, et al., Defendants.**

**No. CIV.A. 03–10227–JGD.**

United States District Court,
D. Massachusetts.

March 21, 2005.

Stephen G. Cox, City Of Boston Law Department City Hall, Boston, MA, for City of Boston, Defendant.

Willie J. Davis, Davis, Robinson & White LLP, Boston, MA, for Emmanuel Dambreville, Defendant.

Scott P. Lopez, Law Office of Scott P. Lopez, Boston, MA, Charles K. Lyons, Lyons and Procida, LLP, Boston, MA, for Lamont Anderson, Defendant.

Susan E. Sullivan, Lynch & Lynch, Easton, MA, for Maureen Ward, Plaintiff.

Tara M. Swartz, Law Office of Scott P. Lopez, Boston, MA, for Lamont Anderson, Defendant.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff, Maureen Ward ("Ward"), was seriously injured on October 21, 2001 when a car she was driving was hit by a vehicle driven by Malcolm Hicks ("Hicks"), who was speeding the wrong way down I–93. At the time, Hicks was fleeing from Boston Police Officers, Emmanuel Dambreville and Lamont Anderson. Ward has brought this action against the City of Boston and the two Police Officers to recover damages for the injuries she sustained. The Complaint sounds in four counts: Count I is against the City for negligence pursuant to Mass. Gen. Laws ch. 258; Count II is against the City for negligent hiring, training and/or supervision of the officers; and Counts III and IV are against Officers Dambreville and Anderson, respectively, claiming a violation of Ward's constitutional rights pursuant to 42 U.S.C. § 1983.

This matter is presently before the court on the motions of the Officers and the City for summary judgment. Because the undisputed facts establish that the Officers did not engage in conduct which "shocks the conscience" as a matter of law, their motion for summary judgment (Docket No. 39) is ALLOWED in accordance with the ruling of the United States Supreme Court in County of Sacramento v. Lewis, 523 U.S. 833, 854, 118 S.Ct. 1708, 1720, 140 L.Ed.2d 1043 (1998). With respect to the City, however, this court concludes that there are sufficient facts for a jury to find that the Officers were an "original cause" of the situation that resulted in the harm to the plaintiff, and that, therefore, the City is not immune from the negligence claim (Count I) under Mass. Gen. Laws ch. 258, § 10(j). The claim of negligent hiring, supervision and training (Count II), on the other hand, shall be dismissed because of both immunity and a lack of evidence. Thus, the City's motion (Docket No. 35) is DENIED as to Count I and ALLOWED as to Count II.

## II. STATEMENT OF FACTS [1]

Viewing the record in the light most favorable to the plaintiff, the relevant facts are as follows:

On October 21, 2001, the defendants Lamont Anderson and Emmanuel Dambreville were employed as police officers by the City of Boston. (DF ¶¶ 1, 3). Officer Dambreville had entered the Police Academy in May, 1999 and graduated in January, 2000. (Id. ¶ 1). Before then he had worked as a 9–1–1 Operator from approximately 1998 until May, 1999. (Id. ¶ 2). He also had worked as a Police Cadet from October, 1995 until 1999. (Id.). Officer Anderson graduated from the Police Academy in September, 2001. (Id. ¶ 3). At the time of the incident, Officer Anderson had not yet completed his required thirty (30) training shifts with an assigned training officer. (Id. ¶ 4). He was working an overtime shift with Officer Dambreville, who was not his assigned training officer. (Id.). Thus, both of the officers were fairly inexperienced.

At approximately 3:00 a.m. on October 21, 2001, Officers Dambreville and Anderson left their assigned district without permission or notice to their dispatcher to get some food, in violation of Boston Police Department Regulations.[2] (Id. ¶ 5; PF ¶ 1). They then conducted a motor vehicle stop of a vehicle which had run a red light, again without notifying a dispatcher, which was also in violation of Department Regulations.[3] (PF ¶ 3; DF ¶¶ 6–7). While dealing with this traffic infraction, the two Officers heard another policeman, Officer Kevin Watson, yell at them from further up the street. (DF ¶ 8). Eventually they saw Officer Watson detain one person, while another individual ran toward a motor vehicle parked behind Officers Dambreville and Anderson's cruiser, and eventually sped off. (DF ¶¶ 8–9). Officers Dambreville and Anderson pursued that vehicle, using their flashing lights and sirens, despite the fact that they had no knowledge of any wrongdoing on the part of the driver. (DF ¶ 10; PF ¶ 6). Officer Dambreville was driving. (See DF ¶ 17).

A high speed chase ensued through Boston city streets. The defendant Officers began the pursuit on Boylston Street, and continued down Tremont onto Washington Street, Milk Street and Congress Street before notifying dispatch of their activities. (PF ¶ 8, DF ¶ 11). The Officers were unable to keep the dispatcher informed of their location, first due to their unfamiliarity with the area's proper radio frequency, and later because of their unfamiliarity with the streets. (PF ¶ 8, DF ¶ 12). Rule 301, § 3, of the Police Department Rules and Procedures requires continuous communications with the dispatcher during a high speed motor vehicle pursuit. (PF ¶ 9 & Ex. H).

The driver of the vehicle, later identified as Malcolm Hicks, was driving at a high rate of speed and very erratically. The defendants assert that he was "swerving, driving straight through red traffic lights

---

**1.** Unless otherwise indicated, for convenience the facts are derived from "Plaintiff's Concise Statement of Facts" filed in opposition to the Police Officers' motion (Docket No. 44) which will be cited as "PF," and the Defendant Police Officers' "Statement of Undisputed Facts" (Docket No. 41) which will be cited as "DF." The City and the plaintiff filed statements of fact in connection with the City's motion for summary judgment. However, these statements are consistent with those filed in connection with the Police Officers' motion and will not be cited separately.

**2.** Rule 103, § 8 of the Boston Police Department Rules and Procedures prohibits a patrolling officer from leaving his assigned area without permission. (PF ¶ 2 & Ex. B).

**3.** Rule 314, § 6 requires the police officer to notify the dispatcher before addressing a traffic violation. (PF ¶ 4 & Ex. D).

and stop signs, and at one stage [the vehicle] even spun out of control, came to a stop in a grassy area and then took off again." (DF ¶ 16). The Officers continued the chase despite several orders from the dispatcher to terminate the pursuit. (PF ¶¶ 10–11). The defendants continued their pursuit to the Moakley Bridge, where they finally transmitted an acknowledgment of the order to terminate the pursuit. (PF ¶ 12).

When the police car was stopped, but with the lights and siren still activated, the defendant Officers saw Hicks' vehicle go the wrong way down the exit ramp from Route 93 North. (PF ¶ 13; DF ¶¶ 17, 18). Officer Dambreville made the decision to follow the suspect the wrong way (southerly) down I–93 North, albeit at a reduced speed, in an "attempt to warn persons in oncoming vehicles with the cruiser's emergency lights that there was a vehicle traveling at a high rate of speed in the wrong direction." (DF ¶ 21). He made this decision although he knew that the driver was trying to get away from the lights and sirens of the police vehicle. (PF ¶ 16). For his part, Officer Anderson "was in shock about what was going on" and although he disagreed with the decision to proceed down the road the wrong way, he may not have said anything. (PF ¶ 15 & Ex. L). Both Officers were aware of the dangers involved in the situation. (See PF ¶ 17 & Ex. M). They did not notify dispatch that they were continuing to follow the vehicle in a southerly direction on Route 93 North. (PF ¶ 18). Rule 301, § 5(c) of the Boston Police Department Rules and Procedures prohibits the pursuit of a vehicle the wrong way on a divided highway. (PF ¶ 19 & Ex. H).

After entering the highway, Hicks continued to drive erratically, zigzagging across the lanes. (DF ¶ 22). He crashed head-on into an oncoming vehicle driven by the plaintiff, Maureen Ward, at such a high rate of speed that his vehicle spun into the air and landed in the breakdown lane. (DF ¶ 23). The defendant Officers ran up to the accident victims, and pulled them out of their vehicles. (PF ¶ 20). Officer Dambreville administered CPR to Hicks.[4] (DF ¶ 25). The Officers then transmitted notice of the accident to operations. (PF ¶ 20). In the transmission to the dispatcher, one of the Officers stated that "they kept their distance as the vehicle got on the expressway going the opposite way" and that "they kept their distance and went around the other way when he struck another vehicle." (PF Ex. G at 9). The plaintiff characterizes this assertion that they "went around the other way" as a deliberate misrepresentation of their actions. (PF ¶ 21). Nevertheless, in their initial reports of the incident, the Officers clearly admitted that the "decision was made to follow the vehicle onto the expressway alerting oncoming traffic by using lights, siren and air horn." (PF Ex. G. at 3, 4).

The pursuit from Boylston Street to the point of collision covered 4.6 miles and lasted over five minutes. (PF ¶¶ 22–23). As the Officers followed the suspect's vehicle on the expressway, the lights and sirens were kept on and the Officers maintained a constant distance from Hicks' vehicle. (Id. ¶ 25).

## III. DISCUSSION

### A. Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to in-

---

4. Hicks was pronounced dead upon his arrival at the hospital. (PF Ex. G at 1). The plaintiff suffered internal injuries, a compound fracture to her ankle and a broken knee/kneecap. (Id. at 8).

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996) (internal citations and quotation omitted). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, ... would permit a rational fact finder to resolve the issue in favor of either party." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) (internal citations omitted). In order to defeat the entry of summary judgment, the nonmoving party must submit "sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994) (internal citations and quotations omitted). The court will not consider "conclusory allegations, improbable inferences, and unsupported speculation." *Galloza v. Foy,* 389 F.3d 26, 28 (1st Cir.2004) (internal citation omitted).

Applying these principles to the instant case, and as detailed below, the Police Officers' motion for summary judgment is allowed, and the City's motion is denied as to Count I and allowed as to Count II.

### B. *Standard for the Police Officers' Liability*

"Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." *Evans v. Avery,* 100 F.3d 1033, 1036 (1st Cir.1996). It is well established that the constitutional right at issue in a challenge to police conduct during a high speed chase is the right to substantive due process. *Id.* ("a person injured as a result of police misconduct may prosecute a substantive due process claim under section 1983").

The United States Supreme Court established "the standard of culpability on the part of a law enforcement officer for violating substantive due process in a pursuit case" in the case of *County of Sacramento v. Lewis,* 523 U.S. 833, 839, 118 S.Ct. 1708, 1713, 140 L.Ed.2d 1043 (1998). There, the Court rejected the lesser standards of "deliberate indifference" or "reckless disregard," and concluded that the officers' conduct must be "that which shocks the conscience" for it to rise to the level of a constitutional violation. *Id.* at 839, 846, 118 S.Ct. at 1713, 1717. The Court further held that "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.* at 836, 118 S.Ct. at 1711–12. Accordingly, "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *Id.* at 854, 118 S.Ct. at 1720.

Ward has attempted to avoid the conclusion that the "shocks the conscience" standard applies in the instant case by arguing that, by the Officers' own admission, they had called off the chase before making the decision to follow Hicks the wrong way onto I–93. Thus, the argument goes, the Officers had time for deliberate consideration of the alternatives, and their conduct should be judged under the lesser "deliberate indifference" standard. *See* Plaintiff's Memorandum of Law (Docket No. 44) ("Pl.'s Mem.") at 5.

■ It is true that the *Lewis* court based its holding on the fact that it was addressing a situation calling for "fast action," where "decisions had to be made in haste, under pressure and frequently without the luxury of a second chance." *Lewis*, 523 U .S. at 853, 118 S.Ct. at 1720 (internal quotation omitted). Nevertheless, even reading the record in the light most favorable to Ward, this is precisely the situation faced by Officers Dambreville and Anderson. Immediately after having called off the pursuit, they saw Hicks drive the wrong way onto the expressway, and had to make a split second decision as to how to respond. "The deliberate indifference standard 'is sensibly employed only when actual deliberation is practical.' *Lewis*, 523 U.S. at 851, 118 S.Ct. [at 1719] . . . . By contrast, the intent-to-harm standard most clearly applies in rapidly evolving, fluid and dangerous situations which preclude the luxury of calm and reflective deliberation." *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir.2005) (no constitutional violation where police, responding to domestic disturbance call, drove through a red light with their emergency lights and siren activated, collided with a passenger car, and the occupant died) (additional quotations and citations omitted). Furthermore, it is not the speed at which the vehicles are traveling which is controlling; rather, it is the fact that a decision must be made as to how to act without the opportunity for calm deliberation. *See, e.g., Dillon v. Brown County, Nebraska*, 380 F.3d 360, 363–64 (8th Cir.2004) ("shocks the conscience" standard applied where police, traveling at a moderate rate of speed, collided with an ATV being driven by an individual police were trying to locate: critical fact was that police had to respond to a rapidly developing situation). In view of the fact that Officers Dambreville and Anderson were faced with a rapidly evolving situation, even if the travel onto the expressway can be separated from and was not a continuation of the preceding high-speed chase, there was no time for reflection and the "shocks the conscience" standard of *Lewis* applies.

Pointing to the numerous violations of Police Department Regulations, which were "designed to facilitate deliberations" and avoid the reckless and dangerous conduct in which the defendant Officers engaged, Ward argues that there is at least a jury question as to whether the Officers' conduct shocks the conscience. *See* Pl.'s Mem. at 4–5. While Ward makes a passionate and compelling argument that the Officers' conduct could be adjudged "deliberately indifferent" and "reckless," there is simply no evidence that the Officers acted with "a purpose to cause harm unrelated to the legitimate object of arrest[.]" *Lewis*, 523 U.S. at 836, 118 S.Ct. at 1711–12. Neither the fact that the Officers violated Department Regulations nor the fact that they continued the pursuit after being ordered to stop elevate their conduct to a level sufficient to shock the conscience and support a violation of constitutional rights. *See Boveri v. Town of Saugus*, 113 F.3d 4, 7 (1st Cir.1997) (summary judgment granted in favor of defendants where fleeing suspect in high speed chase collided with innocent motorist, despite fact that police violated department regulations and failed to heed instruction to break off pursuit). Rather, this case false squarely within the numerous decisions finding no constitutional violation where misguided, and even reckless, police conduct causes innocent bystanders serious harm. *See, e.g., Evans v. Avery*, 100 F.3d at 1038–39 (describing facts of police pursuit cases in which officers' behavior found not to shock the conscience); *Helseth v. Burch*, 258 F.3d 867, 872 (8th Cir.2001) (where suspect "was a fleeing criminal, whose irresponsible high-speed driving endangered countless citizens and ultimately killed one innocent bystander and maimed another . . . [the

defendant] and the other police officers who risked their lives to remove this menace from the public highways were not guilty of a conscience-shocking intent to harm"); *Temkin v. Frederick County Commissioners,* 945 F.2d 716, 721–23 (4th Cir.1991) (no substantive due process violation where officers engaged in a lengthy high speed chase which was initiated because of a minor violation, even though officer violated requirement that he maintain radio contact with supervisor), and cases cited. For these reasons, the Police Officers' motion for summary judgment is ALLOWED.[5]

## C. *The City's Liability for Negligence*

In Count I of her Complaint, Ward has asserted a claim of negligence against the City pursuant to Mass. Gen. Laws ch. 258. The City has moved for summary judgment on the grounds that it is immune from liability under Mass. Gen. Laws ch. 258, § 10(j) because the Officers' conduct was not the "original cause" of the harm which befell Ward. This court concludes that in light of the affirmative conduct on the part of the Officers, the City is not immune and the motion for summary judgment as to Count I of the Complaint is denied.

Mass. Gen. Laws ch. 258, § 10(j) provides that a public employee is immune from suit for:

> any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, *which is not originally caused by the public employer or any other person acting on behalf of the public employer.*

(Emphasis added). Consequently, the City of Boston "is immune from suit under G.L. c. 258, § 10(j), for all harmful consequences arising from its failure to act to prevent the violent or tortious conduct of a third person, unless it 'originally caused' the 'condition or situation' that resulted in the harmful consequence." *Kent v. Commonwealth,* 437 Mass. 312, 317, 771 N.E.2d 770, 775 (2002).

■ "[T]he principal purpose of § 10(j) is to preclude liability ... for failures to prevent or diminish harm." *Jacome v. Commonwealth,* 56 Mass.App.Ct. 486, 489, 778 N.E.2d 976, 979 (2002) (quoting *Brum v. Dartmouth,* 428 Mass. 684, 696, 704 N.E.2d 1147, 1155 (1999)). Consequently, to be an "original cause," there must be "an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that results in harm inflicted by a third party." *Kent,* 437 Mass. at 318, 771 N.E.2d at 775. Moreover, "the act must have materially contributed to creating the specific 'condition or situation' that resulted in the harm." *Id.* at 319, 771 N.E.2d at 775–76.

■ The City argues that the Officers did not create the condition or situation which resulted in Hicks driving the wrong way on I-93. City of Boston Memorandum (Docket No. 36) ("City Mem.") at 5. This court disagrees. Here, viewing the evidence in the light most favorable to the plaintiff, a jury could find that the Officers initiated a chase of Hicks without any reason. They continued to pursue him through crowded and twisting city streets with sirens blaring and lights flashing, despite a number of orders to call off the pursuit. The Officers also continued to chase Hicks despite his erratic driving and apparent disregard for traffic signals, until

---

5. In view of this court's holding that there was no deprivation of the plaintiff's constitutional rights, this court will not reach the alternative defense of qualified immunity. *See Lewis,* 523 U.S. at 842, 118 S.Ct. at 1714.

he finally ended up driving the wrong way on I–93. Given the fact that Hicks had previously driven through red lights and stop signs, it is possible for a jury to find it foreseeable that Hicks would turn down the nearest ramp, regardless of the direction of traffic.

The fact that Officer Dambreville had decided to stop the pursuit before Hicks turned onto I–93 does not alter the result. There is evidence from which a jury could find that the stop was only momentary before the Officers saw "with shock" that Hicks had entered the exit ramp. There is no evidence that Hicks knew or should have known that the hot pursuit had ended.

■ "[I]n order that a claim not be barred by § 10(j), the claim must involve 'something more than the pure failure to alleviate a private harm' and ... to be successful a claimant must show 'some involvement of a public employee in creating the initial injury-causing scenario, not simply a failure to respond adequately after it arises.'" *Armstrong v. Lamy*, 938 F.Supp. 1018, 1043 (D.Mass.1996) (quoting Joseph W. Glannon, *Liability for "Public Duties" Under the Torts Claims Act: The Legislature Reconsiders the Public Duty Rule*, 79 Mass. L.Rev. 17, 26 (1994)) (claim that City liable for negligently hiring teacher who sexually assaulted student not barred by § 10(j)). The affirmative conduct on the part of Officer Dambreville is sufficient to satisfy the "original cause" requirement of § 10(j), and, thus, the court cannot find on the record presently before it that the City is immune from liability. *See, e.g., Bonnie W. v. Commonwealth*, 419 Mass. 122, 126–27, 643 N.E.2d 424, 426–27 (1994) (while Commonwealth immune from suit based on parole officer's (non-active) failure to supervise parolee who assaulted the plaintiff, plaintiff's claim that officer negligently recommended parolee for employment and provided misleading infor-

mation in support of a recommendation not barred). *See also* cases cited in *Kent*, 437 Mass. at 319 n. 9, 771 N.E.2d at 776 n. 9 (describing cases where cause of action existed due to affirmative acts).

■ Equally unpersuasive is the City's claim that the Officers' conduct was not the proximate cause of Ward's injuries, and that Hicks' conduct was an intervening, superseding cause. *See* City's Mem. at 9–10. "Whether negligent conduct is the proximate cause of an injury depends ... on whether the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct." *Kent*, 437 Mass. at 320, 771 N.E.2d at 777. "If a series of events occur between the negligent conduct and the ultimate harm, the court must determine whether those intervening events have broken the chain of factual causation or, if not, have otherwise extinguished the element of proximate cause and become a superseding cause of the harm." *Id.* at 321, 771 N.E.2d at 777. In the instant case, there is sufficient evidence for a jury to find that Hicks' actions, and the resulting collision, were foreseeable consequences of the defendants' actions. *See Jackson v. Town of Milton*, 41 Mass.App.Ct. 908, 669 N.E.2d 225 (1996) (jury finds Town liable for injuries sustained by innocent motorist when he was struck by car driven by someone fleeing from police in a high-speed chase).

In sum, the instant case differs significantly from those where immunity was granted in light of the public employer's simple failure to prevent a harm. *See, e.g., Jacome*, 56 Mass.App.Ct. at 490, 778 N.E.2d at 979–80 (Commonwealth immune from suit by drowning victim's family for failure to warn or otherwise prevent swimming under dangerous conditions since claim was that public employees should have prevented harm, and they did not affirmatively contribute to dangerous situ-

ation); *Brum,* 428 Mass. at 696, 704 N.E.2d at 1155 (Town immune from claim that school and officials failed to prevent student from being killed). Consequently, the City's motion for summary judgment as to Count I is denied.

### D. *Claim for Negligent Hiring, Training and Supervision*

In Count II, Ward seeks to hold the City liable for negligent hiring, training and/or supervision. This claim must be dismissed.

 Claims of failure to train or supervise "are all claims based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance" and thus are barred by § 10(j). *Armstrong v. Lamy,* 938 F.Supp. at 1044. *See also Doe v. Old Rochester Regional School District,* 56 F.Supp.2d 114, 121 (D.Mass.1999). The plaintiff attempts to circumvent this conclusion by arguing that it was the "affirmative action of the City of Boston" in putting two inexperienced officers together that was the "original cause" of the incident. *See* Pl.'s Mem. (Docket No. 45) at 3–4. Despite the creative phraseology, the crux of the argument is still that the City failed to act properly in assigning police officers. Moreover, there is no evidence that it was the specific pairing, as opposed to the individual Officers' misjudgments, which caused the chase to happen the way it did. As the plaintiff herself argues, the Officers acted in contravention of the Department's Regulations—the Regulations, themselves, were appropriate. Thus, there is no evidence that the defendants were not properly trained. Consequently, the claims of negligent supervision and training must fail both on the grounds of immunity and lack of evidence.

The plaintiff has also failed to establish that the City was negligent in the hiring of the officers. There is nothing in the rec-

ord which indicates that the defendants were not qualified to be police officers. *See Doe v. Old Rochester,* 56 F.Supp.2d at 121 (complaint for negligent hiring dismissed for failure to allege employer knew of prior criminal record). Nor does the record establish that the City knew or should have known that the Officers would not follow regulations. For these reason as well, the motion for summary judgment as to Count II is allowed.

### IV. *CONCLUSION*

For all the reasons stated herein, the motion of Officers Dambreville and Anderson for summary judgment (Docket No. 39) is ALLOWED. The City's motion for summary judgment (Docket No. 35) is DENIED as to Count I and ALLOWED as to Count II.